# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| DAMON WILLIS, CALVIN MATLOCK, HAROLD WILLIAMS, DAVE L. TAFT, JR., PAUL HUSTON, SYVENO WRIGHT, EDDIE C. RISDAL, DONALD E. PHILLIPS and MICHAEL MILLSAP,<br><br>Plaintiffs,<br>vs.<br><br>CHARLES PALMER and CORY TURNER,<br><br>Defendants. | No. C12-4086-MWB<br>(Lead Case)<br><br>**ORDER ON DEFENDANTS' LIMITED MOTION FOR RECONSIDERATION; TRIAL LOCATION; AND TO SHOW CAUSE WHY THE COURT SHOULD NOT APPOINT EXPERT WITNESSES** |

_____

Presently before me is defendants' Limited Motion For Reconsideration. (docket no. 82). Below I will also address issues related to expert witnesses and the pending trial on this matter.

## *I.    INTRODUCTION*

On March 30, 2016, I entered an order (docket no. 81) denying in part and granting in part defendant's motion for summary judgment. In relevant part, I found that the defendants are entitled to the defense of qualified immunity on plaintiffs' claims for money damages, but allowed plaintiffs' claims for injunctive relief to proceed. (*See* docket no. 81, p. 54).

On April 3, 2016, the defendants filed a motion for limited reconsideration, asking that certain named defendants be dismissed in light of the motion for summary judgment order. (docket no. 82). On April 8, 2016, the parties had a status conference with Magistrate Judge C.J. Williams. During that hearing, the parties discussed the pending motion for summary judgment, a possible trial date (November 28, 2016), and whether they anticipated listing expert witnesses prior to trial. Judge Williams informed me that the parties do not intend to call experts at trial, other than the currently named CCUSO defendants. The parties held a second status conference with Judge Williams on April 20, 2016. At that status conference, the plaintiffs informed Judge Williams that they intended to file a second amended complaint (docket no. 89) which would render the motion for limited reconsideration moot. The parties also discussed more issues related to expert witnesses.

## II.   *MOTION TO RECONSIDER*

In their motion for limited reconsideration, which would more accurately be called a motion to dismiss, the defendants argue that:

> With the court's grant of qualified immunity, the only remaining claims are injunctive relief. Of the named Defendants, only Director Palmer and Bill Turner still work for DHS. The Motion for Summary Judgment contains facts supporting the last dates of employment for Smith, Royster, Stout, and Loescher. App. 7 (Decl. Wittrock). Mr. Tjaden resigned his employment on March 15, 2016. Injunctive relief claims are judged on the state of conditions at the time of trial. Non-DHS defendants will not be in control of any of the conditions. Defendants who no longer work for DHS are not in any position to implement injunctive relief, if ordered.

(docket no. 82, p. 1). Defendants go on to state that Charles Palmer, director of Iowa's Department of Human Services, should be the only remaining defendant in this case.

Per the discussions counsel had with Judge Williams, the plaintiffs submitted, and Judge Williams directed to be filed, a second amended complaint (docket no. 89) on April 28, 2016. *See* Judge Williams's text order at docket no. 88, granting plaintiffs' request to file the second amended complaint per the parties' agreement. In that second amended complaint, the only named defendants are Charles Palmer and Cory Turner, who replaced defendant Jason Smith as the chief administrator at CCUSO. Because the second amended complaint resolves the issues raised in the defendants' motion for limited reconsideration, it is denied as moot.

### III. TRIAL VENUE

Currently, I hope to set this case for trial on November 28, 2016. Issues that will be discussed more, below, may affect the final trial date. However, there is an open question about where the trial will be held. I recently held a bench trial at the CCUSO facility in Cherokee, Iowa (*See Scott v. Benson*, C11-4055-MWB), and would be willing to do so again.[1]

If the parties agree that trial at CCUSO would be more convenient, the parties are directed to file, no later than July 15, 2016, a plan for how the trial at CCUSO will be conducted. In forming this plan, the parties should consider the necessary space requirements. The "courtroom" space will need to be larger than the room used for the *Scott* case, as the instant case has a larger number of plaintiffs, two interested parties, more witnesses, an additional attorney, and may need to accommodate members of the

---

[1] I make this option available because I recognize the complicated logistics of transporting all of the named plaintiffs and interested parties to the federal courthouse in Sioux City for what is anticipated to be a two week trial.

3

public.  Additionally, the space will need to be securable so both the parties and the court can leave necessary materials in the space overnight.[2]  Finally, the parties will also need to coordinate with the U.S. Marshals Service regarding security.[3]

If the parties agree that trial in Sioux City would be preferable, the parties should file a notice with the court as soon as possible.

### IV.     Expert Witnesses

#### A.     *Status Hearings*

During his status conference with the parties on April 8, 2016, Judge Williams asked the parties about expert witnesses.  Specifically, Judge Williams asked when the parties would designate expert witnesses.  The defendants stated that they only intended to call Jason Smith and Cory Turner, the current and prior CCUSO directors, as experts.  The plaintiffs stated that they had not retained experts.  After consulting with Judge Williams, I directed him to have a follow-up conference to clarify the expert witness issue.  Specifically, I told Judge Williams to ask how the parties intend to get relevant facts before the court so I can decide the complicated issues set out in the motion for summary judgment order, such as the standard of care, without the benefit of expert testimony.

On April 20, 2016, Judge Williams held a follow-up status conference.  Judge Williams started by stating that, in the trial for *Karsjens v. Jesson*, No. CV 11-3659 (DWF/JJK) (D. Minn.), the Minnesota case dealing with similar, but not identical issues,

---

[2]  As in the *Scott* case, I would bring both a clerk and court reporter to Cherokee for the trial.

[3]  The parties are free to contact my chambers if they have any logistical questions.

there was over three weeks' worth of expert testimony. Judge Williams asked what made this case different.

Plaintiffs' attorneys stated that they were hampered by the practical question of securing an expert, considering their clients were indigent and they (the attorneys) had been appointed to the case by the court. Plaintiffs' counsel stated that if they had to, they felt they could go to trial and rely on the testimony of former defendant – and former CCUSO employee – Steve Tjaden. Judge Williams specifically asked about standard of care testimony and the plaintiffs' attorneys indicated that it could come in through the existing law and the testimony of Tjaden. The defendants stated that both Cory Turner, the current director of CCUSO, and defendant Jason Smith, the previous director of CCUSO, have expertise on treating sexual offenders and comparative expertise on different sex offender commitment units. As stated by defendants' counsel, Turner is the former head of the Kansas civil commitment program and Smith is a member of national network regarding the treatment of committed sex offenders. The defendants stated those two individuals would provide their expert testimony.

Judge Williams then noted that, in the *Karsjens* case, the court called its own experts pursuant to Federal Rule of Evidence 706. The plaintiffs stated that they would be agreeable to the court calling its own experts in this case. The defendants stated that they felt "new" experts – either from the plaintiff or from the court – would violate the discovery deadline.[4] The defendants also stated that they would object to the court calling a 706 expert, arguing that it is the plaintiffs' duty to develop their case, and if they can't, the solution is that they do not prevail.

---

[4] The court did not enter a specific scheduling order for the disclosure of expert witnesses. *See* docket no. 53. The general rule is that experts must be disclosed 90 days before trial. Fed. R. Civ. P. 26(a)(2)(D)). Regardless, I can modify my own scheduling order to address this issue.

5

### *B.  Standard*

Federal Rule of Evidence 706, regarding court-appointed expert witnesses, states that:

> (a) Appointment Process. On a party's motion or *on its own*, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.
>
> (b) Expert's Role. The court must inform the expert of the expert's duties. The court may do so in writing and have a copy filed with the clerk or may do so orally at a conference in which the parties have an opportunity to participate. The expert: (1) must advise the parties of any findings the expert makes; (2) may be deposed by any party;(3) may be called to testify by the court or any party; and (4) may be cross-examined by any party, including the party that called the expert.
>
> (c) Compensation. The expert is entitled to a reasonable compensation, as set by the court. The compensation is payable as follows: (1) in a criminal case or in a civil case involving just compensation under the Fifth Amendment, from any funds that are provided by law; and (2) in any other civil case, by the parties in the proportion and at the time that the court directs--and the compensation is then charged like other costs.
>
> (d) Disclosing the Appointment to the Jury. The court may authorize disclosure to the jury that the court appointed the expert.
>
> (e) Parties' Choice of Their Own Experts. This rule does not limit a party in calling its own experts.

Fed. R. Evid. 706.  The Eighth Circuit Court of Appeals has explicitly recognized that court-appointed experts are a valid option.

> [W]e conclude upon careful analysis that Federal Rules of Evidence 614(a) and 706(b), read in light of 28 U.S.C. §§ 1920 and 2412 (1982), and Federal Rule of Civil Procedure 54(d), confer upon the district court discretionary power to call [plaintiffs'] lay and expert witnesses as the court's own witnesses and to order the government as a party to this case to advance their fees and expenses, such advance payment to be later taxed as costs.

*U.S. Marshals Serv. v. Means*, 741 F.2d 1053, 1057 (8th Cir. 1984). Other courts have made similar findings:

> Under Federal Rule of Evidence 706, [district court judges] have discretionary authority to appoint an expert witness, either on their own motion or on the motion of a party. Fed.R.Evid. 706(a); *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996). Appointment of an expert witness may be appropriate, when it is necessary to ensure a just resolution of the claim. *Steele*, 87 F.3d at 1271.

*Maldonado v. Unnamed Defendant*, --- F.3d ----, 2016 WL 1637981, at *14 (11th Cir. 2016).

> "A Rule 706 expert typically acts as an advisor to the court on complex scientific, medical, or technical matters."); *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) (finding the district court's decision to appoint a neutral expert witness under Federal Rule of Evidence 706 "appropriate" where the court faced "confusing" and "contradictory evidence about an elusive and unknown disease").

*Foster v. Enenmoh*, --- Fed.Appx. ----, 2016 WL 2755760, at *1 (9th Cir. 2016). Some

> courts treat this power as "the exception and not the rule," limiting appointment of experts to the "truly extraordinary cases where the introduction of outside skills and expertise, not possessed by the judge, will hasten the just adjudication of a dispute without dislodging the delicate balance of the juristic role." *Reilly v. United States*, 863 F.2d 149, 156 (1st Cir. 1988).

*Rachel v. Troutt*, --- F.3d ----, 2016 WL 1638066, at *5 (10th Cir. 2016).

Once an expert is appointed, "[a] judge or clerk of any court of the United States may tax as costs the following . . . [c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828." 28 U.S.C. § 1920. As stated by Judge Pratt in the Southern District of Iowa, the allocation of costs must be done equitably:

> hiring court-appointed experts was a natural choice when faced with the dilemma of approving a complex settlement agreement that was the byproduct of negotiations between self-interested parties. Since "the expense mechanism under Rule 706(b)" is "essentially an equitable procedure," *U.S. Marshals Service v. Means*, 741 F.2d 1053, 1058–59 (8th Cir.1984), the Court deems it fair to tax equally the costs of these experts to the Plaintiffs, through their counsel, and the Defendant.

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 444-45 (S.D. Iowa 2001).

### C. *Analysis*

In my order on the defendants' motion for summary judgment, I identified three remaining issues for trial: 1) does CCUSO's treatment program violate the constitutional "shock the conscience" standard; 2) is CCUSO's application of Iowa Code § 229(A) punitive; and 3) are the procedures at CCUSO the least restrictive alternative for committing sexual offenders. After considering these issues, I question whether a just resolution of this case is possible without the testimony of outside experts.

For example, I question whether Tjaden is competent to provide true expert opinions. Tjaden has a Master's degree in social work and received his training in sex offender treatment from the Iowa Board for the Treatment of Sexual Abusers. Prior to starting at CCUSO, Tjaden had no background in therapy or treatment. He started at CCUSO as a guard because he previously worked as a jailer. He got his therapy related

education – including his Master's degree – while working at CCUSO. He started running therapy sessions at CCUSO two years before he got his certification in sex offender treatment and four years before he completed his Masters. *See* docket no. 79-3 at 2. He certainly is in a strong position to opine about his experience at CCUSO and how those experiences affected the plaintiffs. However, his expertise, which is specific to CCUSO, is not sufficient to address the larger constitutional questions presented in this case. To show whether or not the treatment at CCUSO shocks the conscience, there will need to be some amount of comparative testimony, *i.e.* "this is what normally happens, but this is what happened here."[5] Tjaden, a former defendant in this case whose only experience is at CCUSO, is in no position to provide that kind of testimony.

Similarly, the defendants have repeatedly made the argument that Iowa's civil commitment program is distinguishable from the programs at issue in Minnesota and Missouri, which were struck down when they faced similar constitutional challenges in the *Karsjens* and *Van Orden* cases.[6] However, at trial, that type of bare assertion is not probative evidence. Rather, I need the facts about both Iowa's program and those other programs before I can determine if they are distinguishable. No currently identified witness is in a position to provide that kind of analysis.

Finally, I am mindful of the plaintiffs' status as civilly committed patients. As Judge Posner recently observed in a Seventh Circuit case dealing with an indigent prisoner with no expert:

---

[5] Put another way, I have determined that the legal standard regarding treatment at CCUSO is what "shocks the conscience." *See* docket no. 81. However, the record contains virtually no discussion of what adequate sex offender treatment looks like from a medical perspective. To determine if CCUOS's treatment does, or does not shock the conscience, I must know what sex offender treatment should be.

[6] *See* my prior order (docket no. 81, p. 36-49) for a more complete discussion of the different cases.

> Because of the profound handicaps under which the plaintiff is litigating and the fact that his claim is far from frivolous, we urge the district judge to give serious consideration to . . . appointing a neutral expert witness, authorized by Fed. R. Evid. 706, to address the medical issues in the case. . .

*Rowe v. Gibson*, 798 F.3d 622, 631-32 (7th Cir. 2015). This case presents a similar, but more extreme situation. The plaintiffs have no resources. They are indigent and their indigency is the result of a state determination that they suffer from a mental abnormality. *See* I.C.A. § 229A.2(6). Even if they receive the best care available, some of the plaintiffs may never achieve release from CCUSO. If CCUSO is punitive in nature or providing constitutionally deficient care, they may *all* spend the rest of their lives there. The stakes of this case could not be higher. It certainly qualifies as an exceptional circumstance.

Accordingly, I believe that, because the questions presented are complex and involve questions of medicine, psychiatry and other behavioral sciences, the court requires expert testimony to aid in the prompt and just adjudication of this matter.[7]

---

[7] As noted above, Judge Frank in Minnesota reached a similar conclusion.

> The Court acknowledges the need for experts in this case in order to fully and properly litigate the claims at issue. The Court makes no determination as to whether Plaintiffs are entitled to appointment of experts solely on their behalf pursuant to Rule 706, but simply recognizes that the Court requires the assistance of expert testimony to properly adjudicate the claims in this matter. Thus, the parties shall each submit nominations to the Court and identify the particular area of expertise of each nominee. The parties shall also identify the hourly rate of each such nominee. Given Plaintiffs' indigent status, and the particular facts and circumstances of this case, the Court

Pursuant to Fed. R. Evid. 706(a) the parties are hereby directed to show cause why the court should not call its own expert witnesses.

### D. *Show Cause and Nomination Procedure*

The parties will be given 10 days from the date of this order to file their show cause motions. Which I will promptly rule on. If the parties fail to show cause why the court should not retain its own experts, I will direct Judge Williams to oversee both the expert selection process and the cultivation of the expert testimony as set out below.[8]

The parties will have 45 days from the date of my order to nominate expert witnesses. The parties should nominate a total of four experts, of which Judge Williams will select at least one, but no more than three, to be retained in this case.[9] Judge Williams will have broad discretion to shape the direction of how the experts are employed by the court. However, the expert or experts must provide the court competent testimony about 1) how Iowa's civil commitment program compares to other civil commitment programs throughout the country; 2) what practices are medically accepted to treat sexual offenders; and 3) what is the likelihood that the treatment employed by the defendants will result in the plaintiffs progressing through treatment at CCUSO and

---

reserves the right to require Defendants to advance the fees and expenses for any such appointed experts.

*Karsjens v. Jesson*, 231No. CV 11-3659 (DWF/JJK) docket no. 354 *3 (October, 25 2013).

[8] I believe referring this matter to Judge Williams is the best practice to avoid potential conflicts of interest when I ultimately rule on the merits after trial.

[9] The parties are strongly encouraged to jointly select four neutral experts. However, if the parties are unable to work together on this issue, each side should nominate two of the four experts.

achieving eventual release. The experts should be unbiased individuals with no previous connection to CCUSO.

As set out above, a court can only retain an expert who consents to participating in the case. Accordingly, the experts solicited by the parties will likely need to evaluate the case materials in some preliminary fashion before agreeing to be nominated. If initial fees are required by the experts in evaluating whether they agree to be nominated, those fees shall be advanced by the defendants, without any prejudice to the subsequent adjudication of this case or the taxing of costs.[10] Along with the nominations, the parties should also submit 1) an explanation of the experts' background and area of expertise; 2) the costs associated with the expert; 3) an estimated timeline for the expert to complete their evaluation; 4) a plan for the parties to provide the experts any discovery material or access the experts may require; and 5) an accounting of any fees advanced by the defendants.

All other directions will be set out by Judge Williams.

## V.   CONCLUSION

For the reasons set out above: 1) the defendants' Motion For Limited Reconsideration (docket no. 82) is denied as moot; 2) by no later than July 15, 2016 the parties shall file a plan with the court for holding trial in this matter at the CCUSO facility

---

[10] After the nomination process, Judge Williams will set out the exact method for compensating the experts he selects. Likely this will involve the defendant making an initial deposit with the court, to cover the experts' fees, without any prejudice to how the fees will ultimately be distributed at the close of the case. *See Karsjens v. Jesson*, No. CV 11-3659 (DWF/JJK), 2015 WL 7432333, at *2 (D. Minn. 2015), for an explanation of how court appointment expert fees were assessed in the Minnesota civil commitment case; *see also Van Orden v. Schafer*, No. CV 09-0971 (AGF/MAM) (E.D. Mo. 2015) (docket nos. 502 and 503) regarding the appointment of Rule 706 experts in that case.

in Cherokee, Iowa (or in the alternative, notify the court that the parties agree to holding the trial at the Federal Courthouse in Sioux City); and 3) the parties have ten days from the date of this order to show cause why the court should not retain its own experts as set out above.

**IT IS SO ORDERED**.

**DATED** this 25th day of May, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA