IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| DAMON WILLIS, CALVIN MATLOCK, DAVID L. TAFT, JR., PAUL HUSTON, SYVENO J. WRIGHT, EDDIE RISDAL, DONALD E. PHILIPS, MICHAEL MILLSAP, and HAROLD D. WILLIAMS,<br><br>Plaintiffs,<br>vs.<br>CHARLES PALMER and CORY TURNER,<br><br>Defendants. | No. 12-CV-4086-MWB<br><br>**ORDER** |

_____

This matter is before the Court on defendants' Motion for Entry of Protective Order. (Doc. 118). Plaintiffs timely resisted the motion (Doc. 120), defendants timely filed a reply (Doc. 121), and the Court held a telephonic hearing on the motion. (Doc. 124). For the following reasons, defendants' Motion for Entry of Protective Order (Doc. 118) is **granted in part and denied in part**, as set forth in this Order and in the Protective Order, filed contemporaneously herewith.

### A. *Medical Records*

To the best of the Court's understanding, defendants seek a protective order that would "restrict Plaintiffs from having access to one another's [medical treatment] information." (Doc. 118). Defendants concede "that some of the[ ] documents" defendants seek to have included within the scope of the protective order "may be pertinent to the dispute at bar." (Doc. 118-3, at 2). Defendants' proposed protective order would bar not only plaintiffs themselves from accessing the medical treatment

records in dispute, but would bar plaintiffs' counsel from accessing the information as well.[1]

Plaintiffs, in response, argue that the records are essential for plaintiffs to be able to develop their case. Further, during the hearing, plaintiffs argued that designating the disputed records as being for "attorneys' eyes only" would prejudice plaintiffs in developing their case because the parties themselves have a better understanding of the issues presented and, thus, would be better situated to review the records and advise counsel as to the relevancy of each piece of information received. In support of this position, during the hearing plaintiffs argued that the records in dispute are group treatment records, meaning that the information contained within the records will have already been disclosed to other patients during one or more group therapy sessions. This disclosure to other patients, plaintiffs argue, constitutes a waiver of any right to confidentiality each patient may have been entitled to. Defendants disagreed, but stated they would be agreeable to the use of an "attorneys' eyes only" designation.

The communication at issue—discussions between patients and a psychotherapist—implicates the psychotherapist privilege. The law surrounding the psychotherapist-patient privilege is largely unsettled, and few courts have addressed the nuanced issue now presented to this Court.

> Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is "rooted in the imperative need for confidence and trust." [*Trammel v. United States*, 445 U.S. 40, 51 (1980)]. Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is

---

[1] During the telephone hearing on this motion, the Court suggested that an attorneys'-eyes-only ("AEO") provision would address some of plaintiffs' concerns while simultaneously protecting the confidentiality of the information. Counsel for defendant suggested that the proposed protective order provided for an AEO designation, but it does not.

> willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

*Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) (footnote omitted). The Supreme Court went on to emphasize the importance of the patient's willingness to talk freely. *Id*. Were the patient not willing to speak freely with his or her therapist, it would be difficult, if not impossible, for the therapist to provide the care his or her patient seeks. *Id*.

The Supreme Court's analysis of the psychotherapist-patient privilege is rooted in the same rationale as are the spousal and attorney-client privileges. Both privileges protect those communications made under the veil of confidentiality. The spousal privilege does not, by its very nature, contain an exception for communications made in the presence of parties who are necessary for the communication to be made, but whose presence would ordinarily destroy the privilege. The attorney-client privilege, however, does. *See, e.g.*, *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, No. CV 09-4675(JFB)(ARL), 2011 U.S. Dist. LEXIS 67388 (E.D.N.Y. June 22, 2011).

Analogizing the psychotherapist-patient privilege to the attorney-client privilege, the party claiming the privilege bears the burden of establishing that the privilege attaches to the information sought. *Fitzgerald v. Cassil*, 216 F.R.D. 632, 636 (N.D. Cal. 2003).[2]

---

[2] The Northern District of California has held:

> The burden of demonstrating that there has been no waiver falls on Plaintiffs. In *Jaffee*, the Supreme Court repeatedly analogized the psychotherapist-patient privilege to the attorney-client privilege. There is good reason, therefore, to treat the two privileges similarly, at least for this procedural purpose. In the context of the attorney-client privilege, nonwaiver must be proved by the party asserting the privilege. *See, e.g.*, *United States v. Martin*, 278 F.3d 988, 999-1000 (9th

*See also Bouschor v. United States*, 316 F.2d 451, 456-57 (8th Cir. 1963) (holding that "one claiming the privilege has the burden of establishing it"). Here, plaintiffs do not dispute that the communication is privileged; rather, they claim any privilege was waived because the communication was made in front of other patients in the group therapy. If plaintiffs are correct, the records sought would no longer be subject to confidentiality, and each plaintiff would be permitted to access the records without the consent of the patient about whom the records concern. The relevant question thus becomes whether disclosure of information during a group therapy session acts as a waiver of the right to confidentiality of one's medical records.

To the best of the Court's understanding, the only records that are now disputed are those that were generated as a result of group therapy sessions. Group therapy, which can be a valuable therapeutic tool, could not occur without a group. Were the Court to hold that any communications made during group therapy lost their privileged status simply because of the nature of this therapeutic tool, many of the benefits of group therapy could be lost because patients may be disinclined to trust their fellow group members. This could be especially true in an environment such as the one at issue where patients are being treated for socially unacceptable sexual behaviors. In analogizing the attorney-client privilege to the psychotherapist-patient privilege, the Court recognizes that third parties may be necessary for counseling to occur, whether legal or psychotherapeutic. Based on the very nature of the group psychotherapeutic tool, others must be present for counseling to occur. The presence of other group members, therefore, does not act as a waiver of the psychotherapist-patient privilege. Of course, each plaintiff may execute a

---

Cir. 2002) (noting that burden is on party asserting attorney-client privilege to establish all elements of privilege, which includes no waiver).

*Fitzgerald*, 216 F.R.D. at 636.

voluntary waiver of the right to maintain the confidentiality of his treatment records. Presently, however, the Court cannot find that the right to confidentiality has been waived.

The Court does not understand the parties to be arguing whether the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") would preclude defendants from disclosing each plaintiffs' medical records to each other plaintiff. To the extent the parties do argue that HIPAA precludes defendants from producing the medical records, the Protective Order filed simultaneously herewith permits defendants to produce the records with an "attorneys' eyes only" designation. *See* 45 C.F.R. § 164.103 (providing that records may be produced pursuant to court order). This does not, however, mean that the psychotherapist-patient privilege has necessarily been waived or overruled. Thus, although defendants may be permitted to produce the treatment records under HIPAA, certain of those records may still fall within the privilege and defendants could, therefore, not be permitted to share them with any patient to whom the records do not belong. Whether a privilege applies will be left to the parties to determine, unless a party should properly bring a motion. Were each relevant patient to execute a waiver of his or her privilege, defendants could produce the records without fear of violating privilege or HIPAA.

Finally, defendants assert that the records are to be kept confidential under Iowa Code Sections 22.7(2) and 217.30, as well as Chapters 228 and 229A. Section 22.7 provides that "[h]ospital records, medical records, and professional counselor records of the condition, diagnosis, care, or treatment of a patient or former patient or a counselee or former counselee" "shall be kept confidential unless otherwise ordered by a court . . . ." The protective order filed contemporaneously herewith is such a court order allowing the records to be disclosed. Section 217.30 provides that the records at issue are to be kept confidential. Section 217.30(d)(2), however, provides that records "shall not in any

case . . . be disclosed to or used by persons or agencies outside the department unless they are subject to standards of confidentiality comparable to those imposed on the department by this section." The confidentiality provisions contained in the Protective Order are comparable to those imposed by Section 217.30. Further Section 217.30 addresses the duties of the Department of Human Services with respect to its patients. This Section does not prohibit each plaintiff from obtaining his treatment records and voluntarily giving those records to each other plaintiff.

Chapter 228 prohibits the disclosure of the records at issue, but is subject to Section 229.25, which provides that "The records maintained by a hospital or other facility . . . shall be confidential, except that the chief medical officer shall release appropriate information [if] . . . [t]he information is sought by a court order." The Protective Order entered is to be interpreted as seeking the relevant records within the meaning of Section 229.25. Chapter 229A does not provide that records are to be kept confidential. Instead, the relevant confidentiality provisions appearing throughout the Iowa Code govern the disclosure of the records at issue. Although Chapter 229A.14 provides an exception for the release of confidential records, this provision would appear to be in addition to other provisions permitting the release of confidential records. There is no indication that this Section was intended to provide the exclusive exception for disclosure of confidential records. As such, defendants may lawfully disclose the records pursuant to the Protective Order, and each plaintiff may lawfully provide his treatment records to each other plaintiff, provided the records are voluntarily given.

Defendants' motion for a protective order with respect to plaintiffs' medical records is **granted in part and denied in part**, as is consistent with the simultaneously filed Protective Order.

### B. USB Drive

Plaintiffs have advised that plaintiff David L. Taft, Jr. was, at one point, in possession of a USB drive that allegedly contained another patient's treatment records. (Doc. 120, at 1-2). The Civil Containment Unit for Sexual Offenders, where each plaintiff is housed, has a policy prohibiting any patient from being in possession of another patient's medical records. Because plaintiff Taft violated this policy, he was given a behavior report, which can have negative repercussions in terms of a patient's ability to move through the program or be discharged from the program. Plaintiffs have requested that the Court order the return of plaintiff Taft's USB drive and strike the behavior report that was given to plaintiff Taft. (Doc. 120). During the hearing, the parties advised the Court that plaintiff Taft availed himself of the grievance process available to challenge behavior reports and the report was ultimately stricken. Further, plaintiff Taft was given the opportunity to transfer all information contained on the USB drive, other than other patients' treatment records, to a different USB drive. Plaintiff Taft was, however, required to purchase a new USB drive to do so.

At this point, the Court understands plaintiffs to challenge the behavior report and the cost plaintiff Taft was required to bear in purchasing a new USB drive. Neither of these issues, however, is properly before the Court. The instant motion addresses a protective order, and there is no indication that a claim has been brought with respect to these issues or that plaintiffs have exhausted any administrative remedies that may exist. Finally, because the behavior report has been stricken, that issue is now moot. Therefore, plaintiffs' request for relief with respect to plaintiff Taft's USB drive and behavior report is **denied**.

### C. *Motion to File Appendix Under Seal*

To the extent a motion has been made "to file the Appendix and the Statement of Facts for the upcoming Motion for Summary Judgment under seal," the motion is **denied as unripe**. (Doc. 118, at 1).

For the reasons set forth above, defendants' Motion for Entry of Protective Order, (Doc. 118) is **granted in part and denied in part**. Plaintiffs' request for relief with respect to plaintiff Taft's USB drive and behavior report is **denied**. To the extent defendants have brought a motion to file documents relating to the upcoming motion for summary judgment under seal, the motion is **denied as unripe**. This Order and the contemporaneously filed Protective Order shall govern this case.

**IT IS SO ORDERED** this 24th day of April, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa